Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/08/2018 09:10 AM CDT

In re Estate of Bernadine M. Karmazin, deceased.
Denise Baumgart and Kenneth Karmazin, appellees
and cross-appellants, v. Judy O'Sullivan,
Personal Representative of the Estate
of Bernadine M. Karmazin, deceased,
appellant and cross-appellee.

___ N.W.2d ___

Filed March 16, 2018.    No. S-17-228.

1. **Decedents' Estates: Appeal and Error.** An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law. In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.

2. **Judgments: Appeal and Error.** On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

3. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.

4. **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf.

5. **Pleadings.** The pleadings in a cause are not mere ordinary admissions for the purposes of use in that suit, but are judicial admissions.

6. **Pleadings: Evidence: Waiver.** In effect, pleadings are not a means of evidence, but a waiver of all controversy, so far as the opponent may desire to take advantage of them, and therefore, a limitation of the issues.

7. **Appeal and Error.** A party cannot complain of error which the party has invited the court to commit.
8. **Actions: Pleadings: Parties: Joinder.** Joinder or substitution of the real party in interest shall have the same effect as if the action had been commenced by the real party in interest.
9. **Property: Taxes.** Real property tax liability rests with the owner or owners of the real property at the time real property taxes are charged, accrued, or assessed, i.e., due and payable.
10. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

Appeal from the County Court for Hall County: Arthur S. Wetzel, Judge. Affirmed in part, and in part reversed and remanded with direction.

Brenda K. Smith and Gretchen L. McGill, of Dvorak Law Group, L.L.C., for appellant.

Mark A. Beck, of Beck Law Office, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

A life tenant leased real estate to a remainderman for 1 year ending on October 31, 2015. The life tenant died in August. The principal issue is whether the lease clause requiring the lessor to pay unspecified real estate taxes made her liable for 2015 taxes that became due and payable on December 31. The county court allowed the remaindermen's claims for these taxes. Although two interpretations are possible, the one requiring the estate to pay taxes becoming due after the lease expired was not reasonable. We reverse that portion of the order and otherwise affirm.

## II. BACKGROUND

Bernadine M. Karmazin (decedent) conveyed a remainder interest in certain property to Kenneth Karmazin (Karmazin) and in other property to Denise Baumgart. Decedent retained a life estate interest in the property.

In 2014, decedent entered into two lease agreements with Karmazin. The lease terms required Karmazin to pay cash rent to decedent for land intended for crops, pasture, or hay. The leases were for a 1-year term, commencing November 1, 2014, and ending on October 31, 2015. They provided that "Real Estate Taxes will be paid by [decedent]." Karmazin's rent payments were due April 1, August 1, and November 1, 2015.

On August 23, 2015, decedent died. After the commencement of informal probate proceedings, a notice to creditors published in a local newspaper stated that creditors of the estate must file their claims with the court on or before December 15, 2015, or be forever barred. The estate did not mail to either Baumgart or Karmazin (collectively the claimants) a copy of the notice to creditors.

On December 15, 2015, an attorney for the estate wrote a letter to the personal representative regarding liability for real estate taxes. The attorney stated that because decedent died in 2015, the estate's obligation to pay real estate taxes ended with the real estate taxes that became delinquent in 2015, in other words, the 2014 taxes.

On April 11, 2016, Baumgart filed an "Application to Determine Tax Liability." She alleged that in "late 2015, demand was placed upon the Personal Representative to pay the 2015 real estate taxes," which resulted in the December 15, 2015, letter. She asked that the court determine the estate's liability for the 2015 real property taxes and require the estate to reimburse 2015 taxes paid. The estate disallowed the claim. On July 28, the claimants filed an amended application to determine tax liability and liability for rent paid by Karmazin. The estate also disallowed this claim.

The claimants filed a petition for allowance of the claim. They identified the amount of the claim as "unknown." The estate objected. It alleged that the claims were barred under Neb. Rev. Stat. § 30-2485(b) (Reissue 2016). It also alleged that the claimants failed to properly file a claim because they did not identify an amount.

During a hearing, the parties stipulated that the estate did not pay any of the 2015 real estate taxes on the property. Baumgart testified that she was a remainderman of certain property in Nuckolls County, Nebraska, that the property "became [hers]" when decedent died, and that she paid the 2015 real estate taxes. Karmazin similarly testified that he was a remainderman in real estate in Nuckolls County pursuant to a deed, that he became the sole owner upon decedent's death, and that he paid taxes and interest. Over objection, the court allowed the claimants to submit deeds at a later time showing life estate and remainder interests. The claimants subsequently filed an affidavit to which they attached copies of deeds evidencing the ownership of the relevant parcels of real estate.

The county court determined that Karmazin did not timely submit his claim for rent. With regard to real estate taxes, the court stated that under operation of law, the liability for real estate taxes would lie with the owner of the property at the time the taxes became due and payable. However, the court determined that because the lease agreements controlled the lessor's and lessee's respective obligations to pay taxes, the law's default rule did not apply. The court found the leases to be ambiguous, noting that they did not specify the tax year. Ultimately, the court ordered the estate to reimburse Baumgart for payment of real estate taxes in the amount of $2,097.74 and to reimburse Karmazin $8,929.46, plus interest of $68.40.

The estate filed a timely appeal, and the claimants asserted a cross-appeal. We moved the case to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

## III. ASSIGNMENTS OF ERROR

The estate assigns, consolidated, that the court erred in (1) determining the claimants had standing, (2) allowing testimony from the claimants regarding their status as remaindermen of the estate, (3) admitting deeds without proper foundation, (4) determining the claimants made a proper claim under the probate code, (5) determining the lease agreements were ambiguous, and (6) determining the estate must reimburse the claimants for payment of real estate taxes and interest.

On cross-appeal, the claimants allege that the court erred in determining that Karmazin failed to properly file his claim for rent.

## IV. STANDARD OF REVIEW

[1] An appeal from the county court's allowance or disallowance of a claim in probate will be heard as an appeal from an action at law.[2] In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[3] The probate court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous.[4]

[2,3] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[5] The meaning of a contract and whether a contract is ambiguous are questions of law.[6]

---

[2] *In re Estate of Alberts*, 293 Neb. 1, 875 N.W.2d 427 (2016).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Frohberg Elec. Co. v. Grossenburg Implement*, 297 Neb. 356, 900 N.W.2d 32 (2017).

## V. ANALYSIS

### 1. Standing

The estate contends that the claimants failed to establish standing. The claimants based their claim on their remainder interests in the property. But the estate argues that they failed to offer valid evidence of ownership.

[4] The estate conflates standing with proof of the validity of a claim. Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf.[7] The probate code gives standing to purported creditors of an estate.[8] Because the claimants purported to be creditors of the estate, they had standing to assert their claims.

### 2. Interest in Property

The estate argues that the claimants' failure to offer deeds into evidence defeats their claim of an ownership interest. It relies upon *In re Estate of Olsen*.[9] In that case, we stated that in cases involving questions of title, ownership, and right to possession in the proof of deeds, leases, and mortgages and other instruments of title, the best evidence rule requires that the instrument itself be produced, unless a sufficient foundation is laid for the production of secondary evidence of the contents of such instrument, such as by showing its loss or destruction or that it is in the possession or control of an adverse party who has neglected to produce it after notice to do so.[10]

[5,6] But here, the estate admitted in its pleadings the claimants' ownership interests. The pleadings in a cause are not mere ordinary admissions for the purposes of use in that

---

[7] *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017).

[8] See, generally, § 30-2485 and Neb. Rev. Stat. §§ 30-2486 and 30-2488 (Reissue 2016).

[9] *In re Estate of Olsen*, 254 Neb. 809, 579 N.W.2d 529 (1998).

[10] *Id.*

suit, but are judicial admissions.[11] In effect, pleadings are not a means of evidence, but a waiver of all controversy, so far as the opponent may desire to take advantage of them, and therefore, a limitation of the issues.[12] In the estate's objection to the claim, it stated that "[p]ursuant to Claimant's Amended Application, [decedent] died in 2015, and Claimants owned a remainder interest in the Property subject to the life estate interest of [decedent]." The objection next stated that "Claimants were the owners of the Property as of December 31, 2015." Because of the estate's judicial admissions of the claimants' remainder interests, the claimants were not bound to produce the actual deeds at the hearing.

### 3. Amount of Each Claim

The estate next contends that the claimants failed to make a proper claim under the probate code. It submits that the failure to identify the amount of the claims was a fatal defect. We disagree.

The estate relies on *J.R. Simplot Co. v. Jelinek*.[13] In that case, a creditor filed a "'Demand for Notice'" (demand) which stated that the creditor had "'a financial interest in the estate of the deceased and holds an outstanding claim'" but did not include a basis for the potential claim nor an amount due.[14] We concluded that the demand was "at most 'notice to a representative of an estate regarding a possible demand or claim against the estate.'"[15] We observed that the demand did not refer to the statute governing presentation of claims,[16] but, rather, referenced a statute providing that interested parties

---

[11] *Prime Home Care v. Pathways to Compassion*, 283 Neb. 77, 809 N.W.2d 751 (2012).

[12] *Id.*

[13] *J.R. Simplot Co. v. Jelinek*, 275 Neb. 548, 748 N.W.2d 17 (2008).

[14] *Id.* at 556, 748 N.W.2d at 25.

[15] *Id.* at 557, 748 N.W.2d at 25.

[16] See § 30-2486.

can request notice from the court of filings pertaining to an estate.[17] We further noted that the claimant had earlier filed a "'Statement of Claim'" which "provided a description of the claim, a due date, and the name and address of the claimant or authorized party."[18]

We do not read *J.R. Simplot Co.* as mandating that an amount due be specified. We noted in the facts section of the opinion and again in the analysis that the demand did not list a basis for the claim or an amount due. But those omissions merely buttressed our ultimate conclusion that the demand did not qualify as a statement of a claim under § 30-2486(1).

Significantly, the statute governing presentation of claims does not require that the amount of the claim be specified. Instead, § 30-2486(1) provides that a claimant "may file a written statement of the claim." The statute identifies matters that shall be stated: "If a claim is not yet due, the date when it will become due shall be stated. If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated. If the claim is secured, the security shall be described."[19] The statute provides that the failure to correctly describe such matters "does not invalidate the presentation made."[20]

Here, the amount of the claims was easily ascertainable and not subject to dispute. The claimants sought reimbursement for 2015 real estate taxes paid. The amount of such taxes was a matter of public record. Karmazin additionally requested reimbursement for rent, and he attached a copy of the leases which showed the payment dates and amounts due. The application notified the estate of the basis for the claims, and the amounts of the claims could be determined with certainty. We find no merit to the estate's assignment of error.

---

[17] See Neb. Rev. Stat. § 30-2413 (Reissue 2016).

[18] *J.R. Simplot Co. v. Jelinek, supra* note 13, 275 Neb. at 558, 748 N.W.2d at 26.

[19] § 30-2486(1).

[20] *Id.*

Although not statutorily required, the better practice is to identify an amount of a claim. Doing so advances the purpose of § 30-2485—"'facilitation and expedition of proceedings for distribution of a decedent's estate, including an early appraisal of the respective rights of interested persons and prompt settlement of demands against the estate.'"[21]

## 4. Rent

On cross-appeal, the claimants assert that the county court erred in finding Karmazin's claim for rent to be barred. At issue is a payment made after decedent's death. The claimants now contend that Karmazin's claim is not yet due or, alternatively, that it arose before decedent's death. But they advanced a different view at the trial level.

[7] Any error by the county court in finding that the claim arose after death was invited. In a brief filed with the court, the claimants took the position that the claim arose after decedent's death and that they had 4 months after the claim arose to file a claim.[22] Similarly, the estate asserted in its responsive brief that the claim arose after decedent's death. The court ruled accordingly. A party cannot complain of error which the party has invited the court to commit.[23] Because the claimants contended before the county court that the claim arose after decedent's death, they cannot now argue that it arose before her death.

The statute does not authorize a court to extend the time for filing a claim that arose after death. Section 30-2485(a)(1) allows the court to grant a creditor additional time upon "good cause shown" for a claim that arose prior to a decedent's death. But there is no similar "good cause" provision for a claim that arose after the decedent's death.[24]

---

[21] *J.R. Simplot Co. v. Jelinek, supra* note 13, 275 Neb. at 554, 748 N.W.2d at 23.

[22] See § 30-2485(b)(2).

[23] *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

[24] See § 30-2485(b).

Karmazin did not timely present his claim for rent. The claim concerned rent due on November 1, 2015. Karmazin asserted the claim on July 28, 2016. Because he did not assert it within 4 months after it arose, we conclude the county court did not err in finding Karmazin's claim for rent to be barred.

### 5. Real Estate Taxes

#### (a) Timeliness of Claim

The estate argues that Karmazin did not timely present a claim for the 2015 real estate property taxes. Those taxes became due and payable on December 31, 2015.[25] Thus, the estate contends that any claim for such taxes must have been made by May 1, 2016, and that Karmazin did not present his claim until July 28.

[8] Whether Karmazin's claim was timely turns on whether the claim for taxes in the July 2016 amended application related back to the claim for taxes in the April 11 application. It did. In the April 11 application, Baumgart stated that she and "her siblings owned a remainder interest in certain real property, subject to the life estate interest of [decedent]." We digress to note that the filing of this claim on behalf of Baumgart's "siblings" did not constitute an unauthorized practice of law.[26] The application requested a determination of "the Estate's liability for 2015 taxes on real property that the Decedent held a life estate interest and received all 2015 income therefrom." The July application added Karmazin's name as an "[a]pplicant." In effect, it joined a real party in interest. "Joinder or substitution of the real party in interest shall have the same effect as if the action had been commenced by the real party in interest."[27] Thus, the amended

---

[25] See Neb. Rev. Stat. § 77-203 (Reissue 2009).

[26] See *In re Estate of Cooper*, 275 Neb. 297, 746 N.W.2d 653 (2008).

[27] Neb. Rev. Stat. § 25-301 (Reissue 2016).

application related back to the original.[28] And because the April application was filed within 4 months of when the claim arose, Karmazin's claim for real estate taxes was not barred.

### (b) Liability for Taxes

The estate argues that the county court erred in determining that the estate must reimburse the claimants for 2015 property taxes. We agree.

### (i) Default Rule

[9] The default rule is that the owner of real property on December 31 is liable for the taxes assessed and levied for that calendar year. Real property tax liability rests with the owner or owners of the real property at the time real property taxes are charged, accrued, or assessed, i.e., due and payable.[29] As mentioned above, the 2015 real estate taxes became due and payable on December 31, 2015. On that date, the remainder-men were the sole owners of the real property. Thus, under the default rule, the claimants would be responsible for payment of the 2015 taxes.

### (ii) Lease Agreements

The default rule can be modified by contract. Here, lease agreements between decedent and Karmazin provided that "Real Estate Taxes will be paid by [decedent]." Due to the leases, the county court determined that the default rule did not apply. The court reasoned:

> It is clear the decedent/life tenant received cash rent for crops planted and harvested in 2015. Logic and equity further dictate the estate should be responsible for the payment of real estate taxes for 2015. The Court determines

---

[28] See *Fisher v. Heirs & Devisees of T.D. Lovercheck*, 291 Neb. 9, 864 N.W.2d 212 (2015).

[29] See *In re Estate of Olsen, supra* note 9.

the intent of the parties was for the tenant to pay rent and the landlord to pay real estate taxes associated with the crop year 2015.

But the county court erred in resorting to consideration of equity. We are presented with an action at law, not in equity.[30] Thus, equitable principles do not apply.

The county court also determined that logic compelled the conclusion that the estate was liable for the taxes. It found the leases to be ambiguous. And in attempting to determine the intent of the contracting parties, it reasoned that it was logical for the estate to pay taxes associated with the 2015 crop year. We disagree on both of these points of law.

[10] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[31] Here, the leases did not specify whether decedent would be responsible for the 2014 taxes or the 2015 taxes. But the leases are ambiguous only if both of the conflicting interpretations are *reasonable*.

We are mindful of the nature of these specific leases. In the absence of a different agreement, a yearly lease of farmland begins on March 1 and ends on February 28 of the succeeding year.[32] But the leases here supplied a different term: November 1, 2014, to October 31, 2015.

In terms of real property taxation, several dates are important. Property is assessed for taxation purposes on January 1.[33] On or before October 15, the county board of equalization levies taxes for that calendar year.[34] The taxes levied for that calendar year become due and payable on December 31,

---

[30] See *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016).

[31] *Frohberg Elec. Co. v. Grossenburg Implement, supra* note 6.

[32] See *Wilson v. Fieldgrove*, 280 Neb. 548, 787 N.W.2d 707 (2010).

[33] Neb. Rev. Stat. § 77-1301(1) (Cum. Supp. 2016).

[34] Neb. Rev. Stat. § 77-1601(1) (Reissue 2009).

in other words, on the last day of the year.[35] In counties with a population of less than 100,000—such as Nuckolls County—the first half of the prior year's taxes becomes delinquent on May 1, and the second half becomes delinquent on September 1.[36]

One interpretation of the leases is that decedent would pay the taxes due or delinquent during the term of the leases. Those would be the 2014 real estate taxes. The 2014 taxes became due on December 31, 2014, and would be delinquent in May and September of 2015—all within the term of the lease.

The claimants proposed, and the county court adopted, a different interpretation. This interpretation, premised upon rent received for crops planted and harvested in 2015, would be that decedent would be responsible for the taxes assessed and levied during the lease term, that is, the 2015 taxes. But those taxes did not become due until December 31, 2015. Typically, they would not be paid until sometime in 2016. Moreover, under this interpretation, either decedent would not have been *liable at all for the 2014 taxes* (which became due and, if not paid by the delinquency dates, delinquent during the lease term) or decedent would have been liable for *both the 2014 and 2015 real estate taxes* in the 1-year term of the lease. This interpretation is not reasonable.

We conclude that the leases are not ambiguous. Although there are two conflicting interpretations of the contract language, only one of them is reasonable. That interpretation made decedent responsible for the 2014 taxes.

The answer becomes clearer if decedent's death is removed from the equation. Under the default rule, decedent—as the owner of the property on December 31, 2015—would have been responsible for the 2015 taxes. And if the leases had been renewed for another 1-year term—from November 1, 2015, to October 31, 2016—decedent would have been liable for the

---

[35] § 77-203.

[36] See Neb. Rev. Stat. § 77-204 (Reissue 2009).

2015 taxes, because they became due and payable during the term of the lease. With or without a lease, the owner of the land would be responsible for the 2015 taxes.

The confusion stems from Karmazin's status as both a tenant under the lease and an owner of the remainder. As the tenant, the lease agreements did not make him responsible for the taxes. But upon decedent's death, the claimants became the sole owners of the land Karmazin leased. As the owners of the land on December 31, 2015, the claimants were liable for the taxes that became due and payable on that date.

Because the estate did not own the property on December 31, 2015, and the leases did not obligate decedent to pay taxes that had not yet become due, we conclude the county court erred in ordering the estate to reimburse the claimants for the real estate taxes they paid. We reverse that part of the court's order and remand the cause with direction to deny this claim.

## VI. CONCLUSION

We conclude that the county court did not err in finding Karmazin's claim for rent to be barred. Because the claimants were the owners of the property on December 31, 2015, and the leases did not obligate decedent to pay the taxes due on that date, we reverse that portion of the court's judgment and remand the cause with direction.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTION.

WRIGHT and KELCH, JJ., not participating.